711 So.2d 802 (1998)
Robert H. CARR, III, Kathleen Carr, Individually and as Representatives of All Persons Similarly Situated
v.
GAF, INC., GAF Building Materials Corp., State Roofing and Supply Company, Inc., and Fontaine Lumber Company, Inc.
No. 97 CA 0838R.
Court of Appeal of Louisiana, First Circuit.
April 8, 1998.
*803 C. Jerome D'Aquila, New Roads, George Matthews Fleming, Houston, TX, Jules B. LeBlanc, III, Baton Rouge, for plaintiffs/appellees, Robert H. Carr, III, et al.
Dominic J. Gianna, New Orleans, Patrick W. Pendley, Plaquemine, for defendants/appellants, GAF, Inc., et al.
Before FOIL, WHIPPLE and KUHN, JJ.
WHIPPLE, Judge.
This matter is before us on remand from the Louisiana Supreme Court, which granted defendants a suspensive appeal herein and remanded with instructions to proceed on an expedited basis. In this appeal, defendants challenge the trial court's judgment which conditionally certified a class of plaintiffs. For the following reasons, we reverse and remand.

PROCEDURAL HISTORY
On August 14, 1996, plaintiffs, Robert Carr, III and Kathleen Carr, filed a petition for damages against defendants, GAF, Inc., GAF Building Materials Corp., State Roofing *804 and Supply Company, Inc. and Fontaine Lumber Company, Inc., alleging that the GAF Timberline shingles installed on their single family residence were disintegrating, causing damage to their home. Specifically, plaintiffs alleged that in or around 1980, they built a home and had it shingled with GAF Timberline shingles based on the assertions of defendants that these were the highest quality roofing materials and that these shingles had a twenty-five year warranty. Plaintiffs further alleged that in or around 1991, only eleven years after installation of the roof, the shingles on their home began to disintegrate. They averred that in the 1970s and 1980s, when oil prices skyrocketed, GAF altered the asphalt compound manufactured with oil products to reduce the overall cost of the production of these shingles, thereby lowering the quality.
On the same day the petition was filed, plaintiffs filed a motion to conditionally certify a class action on behalf of:
All persons and entities that presently own single family residences or did own single family residences in the United States on which there are or were "GAF Timberline shingles" and all persons and entities that own or previously owned single family residences and incurred or may incur any cost or expense by reason of leakage from, or failure, repair, or removal of, all or any portion of "GAF Timberline shingles."
On August 28, 1996, two weeks after the petition was filed and before defendants were served with a copy of the petition, the trial court issued an ex parte order, conditionally certifying the class requested by plaintiffs.[1] On March 31, 1997, after an attempt to remove the matter to federal court ultimately proved unsuccessful, defendants filed a motion for suspensive appeal in the state court proceedings, contesting the state court's order conditionally granting class certification.
Subsequently, plaintiffs filed a motion to dismiss the appeal, arguing that defendants had not shown irreparable injury as required for a suspensive appeal of an interlocutory ruling. Finding that defendants had not made the requisite showing of irreparable injury resulting from the class certification, by order dated August 26, 1997, this court granted plaintiff's motion to dismiss and converted the appeal to an application for supervisory writs to review the issues under our supervisory jurisdiction.
Defendants then applied to the Louisiana Supreme Court, seeking expedited review and a stay of this court's consideration of the writ. On November 14, 1997, the Court granted defendants' writ application, finding that defendants had met their burden of proving irreparable injury, thereby entitling them to a suspensive appeal of the interlocutory judgment granting class certification. Carr v. GAF, Inc., 97-2325 (La.11/14/97); 702 So.2d 1384. In reaching this conclusion, the Court noted in its per curiam that "[i]f the present class remains certified, defendants face a nationwide class potentially consisting of hundreds of thousands of plaintiffconsumers, all asserting a variety of causes of action brought under fifty different state laws." The Court then vacated and set aside the August 26, 1997 order of this court; reinstated defendants' suspensive appeal; and remanded the matter to this court for further proceedings on an expedited basis. Carr, 97-2325 at p. 2; 702 So.2d at 1385.
As set forth in their brief, defendants contend that the trial court erred in conditionally certifying a nationwide class ex parte: (1) based on nothing more than the conclusory allegations of the petition; (2) because the named plaintiffs and class counsel have not shown that they can adequately protect the absent class members; (3) because the named plaintiffs and class counsel have not shown that common questions of law or fact predominate; and (4) because the named plaintiffs and class counsel have not shown that a class action is superior to other methods of resolving this controversy. Thus, defendants requested in their brief that this court reverse the class certification order and *805 remand the case for a hearing on the issue of class certification.
Thereafter, shortly before the scheduled oral argument in this matter, plaintiffs filed a motion to remand, requesting that this court remand the matter to the trial court to allow the parties to file a joint motion to vacate the order granting class certification and to set a hearing on the motion. Defendants opposed the motion to remand, contending that not only did the trial court err in conditionally certifying a nationwide class without an evidentiary hearing, but also that class certification is simply not appropriate in this case, regardless of whether an evidentiary hearing is held. Thus, in their opposition and at oral argument, defendants requested that this court rule, "as a matter of law, that this matter is not and will never be appropriate for national class certification."

DISCUSSION

Prerequisites for Class Action
The class action is a non-traditional litigation procedure permitting a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. Ford v. Murphy Oil U.S.A., Inc., 96-2913, 96-2917, 96-2929, p. 4 (La.9/9/97); 703 So.2d 542, 544. The requirements for a class action, as set forth in LSA-C.C.P. arts. 591 and 592, are: (1) a class so numerous as to make it impractical for all of the persons to join or be joined as parties; (2) the joinder of parties who are members of the class and able to provide adequate representation for absent members; and (3) a "common character" between the rights of the representatives of the class and the absent members. Banks v. New York Life Insurance Co., 97-0837, p. 3 (La.App. 1st Cir. 12/29/97); 705 So.2d 1168, 1171.
The first requirement, often referred to as "numerosity," is not met simply by alleging a large number of potential claimants. Lewis v. Texaco Exploration and Production Co., Inc., 96-1458, p. 15 (La.App. 1st Cir. 7/30/97); 698 So.2d 1001, 1012. In fact, the jurisprudence has held that, in certain circumstances, a "class" can be too numerous to satisfy the numerosity requirement. Lewis, 96-1458 at p. 15; 698 So.2d at 1012 (citing Becnel v. United Gas Pipeline Company, 613 So.2d 1155 (La.App. 5th Cir.1993)). For the numerosity requirement to be met, it must be shown that the class is so numerous that joinder is impractical, but at the same time, it is a definable group of aggrieved persons. Becnel, 613 So.2d at 1158.
The second requirement, "proper joinder," is to ensure adequate representation of the absent class members by requiring that one or more of the class members will represent the interests of the entire class adequately. The claims of the class representatives should be a cross-section of, or typical of, the claims of all class members. Boudreaux v. State, Department of Transportation and Development, 96-0137, p. 13 (La.App. 1st Cir. 2/14/97); 690 So.2d 114, 123.
Thirdly, to establish the requirement of "common character," the mover must establish that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Banks, 97-0837 at p. 4; 705 So.2d at 1172. However, the phrase "common character" encompasses more than the simple existence of questions of law and fact common to the class. This requirement restricts the class action to those cases in which it would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Lewis, 96-1458 at p. 17; 698 So.2d at 1013.

Procedural Requirements for Certifying Class
Defendants assign as error the trial court's ex parte certification of the nationwide class without sufficient evidence or a hearing on the certification issue.
The burden of proving the appropriateness of class certification is on the party seeking to maintain the class action to *806 establish these elements. Cotton v. Gaylord Container, 96-1958, 96-2029, 96-2049, p. 13 (La.App. 1st Cir. 3/27/97); 691 So.2d 760, 768, writs denied, 97-0800, 97-0830 (La.4/8/97); 693 So.2d 147. Conclusory allegations of a pleading alone are insufficient to establish the existence of a class. In determining whether the elements have been established, the court may consider the pleadings, affidavits, depositions, briefs, exhibits and testimony presented at a certification hearing. Cotton, 96-1958, 96-2029, 96-2049 at p. 13; 691 So.2d at 768.
The articles of the Louisiana Code of Civil Procedure governing class actions, LSA-C.C.P. arts. 591-597, and prevailing case law do not require a pre-certification hearing. Cotton, 96-1958, 96-2029, 96-2049 at p. 19; 691 So.2d at 772; Ellis v. Georgia-Pacific Corporation, 550 So.2d 1310, 1313 (La.App. 1st Cir.), writ denied, 536 So.2d 1217 (La.1989). As long as the opposing party is given an opportunity to attack and argue against the class certification, the demands of law are met. On review, absent a showing that the trial court manifestly erred in its determination of the underlying facts supporting certification, or abused its discretion when determining the certification issue, we must confirm the order. Ellis, 550 So.2d at 1313.
Bearing these precepts in mind, we turn to the issues presented herein. We recognize that a hearing is not statutorily nor jurisprudentially necessarily required, and that the trial court may, in the exercise of its discretion, proceed without a hearing. Likewise, we are reminded that the trial court is afforded great discretion in class action certification. However, in the instant case, the only information that the trial court had before it at the time it certified this nationwide class was plaintiffs' petition and motion for class certification. No documentary materials, affidavits, depositions, or testimony, appear in the record to support the assertion that certification of this nationwide class was appropriate; nor do any materials appear in the record to contest plaintiffs' claims that certification was appropriate.
Further, while there is no evidence by which to even approximate the number of potential "class members," both plaintiffs and defendants aver that the class could potentially consist of "millions" of members. The class is broadly defined to include, in part, all individuals currently owning a residence with "Timberline shingles." However, there is no evidence of record to indicate that all members of the class, as defined, or even a substantial number of them, are likely to have a claim against defendants as a result of any defect with the shingles on their homes. Thus, while such a large number may demonstrate that joinder is impractical, it also raises questions which cannot be answered by the record herein as to whether the class is a "definable group of aggrieved persons." See Farlough v. Smallwood, 524 So.2d 201, 203 (La.App. 4th Cir.). writ denied, 526 So.2d 810 (La.1988); Becnel, 613 So.2d at 1158.
Additionally, other than plaintiffs' assertions in their petition, there is nothing in the record to indicate whether they are able to provide adequate representation for the absent class members. No depositions, affidavits or oral testimony of the class representatives were submitted to the court prior to certification. Because the record contains no evidence or testimony to suggest that the class representatives are similarly situated to the absent class members, the trial court surely did not have sufficient information to make a determination that the representatives would fairly ensure the adequate representation of the absent members. See Cotton, 96-1958, 96-2029, 96-2049 at pp. 16-17; 691 So.2d at 770.
Regarding the additional requirement of "common character" among the rights asserted, plaintiffs again offered no evidence at the time the class was certified to establish that common questions of law or fact predominate over any questions affecting only individual members. While plaintiffs define the allegedly defective product in their petition as "GAF Timberline shingles," defendants have alleged in their brief to this court that "Timberline" describes a product line rather than a single product and that the product line includes various types of shingles. Additionally, defendants allege that Timberline shingles have been manufactured from 1967 through the present, during which *807 period defendants allege there were changes in the manufacturing process and product warranties. Thus, at a minimum, there exists the potential that diverse factual issues may in fact predominate.
Additionally, where plaintiffs seek to represent a nationwide class, the trial court must consider which states' law will apply, and how variation in state law will affect the superiority of a class action. See Phillips Petroleum Company v. Shutts, 472 U.S. 797, 814-823, 105 S.Ct. 2965, 2976-2980, 86 L.Ed.2d 628 (1985); Castano v. American Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996).[2] Variations in state law may swamp any common issues and defeat predominance of common questions of law. In evaluating the effect on class certification of state law variations, a court cannot rely on plaintiffs' conclusory assertion that "common" legal issues predominate. Rather, there must be a determination that there is an absence of state law variations or that such variations would not be an insurmountable obstacle, a determination to be made by reference to the applicable law. Castano, 84 F.3d at 741.
In its order granting certification, the trial court noted that plaintiffs' claims raised issues of negligence, fraud, fraud in the inducement, negligent misrepresentation and omission, breach of warranties, and conspiracy to commit fraud. Because the class is a nationwide class, the law of fifty states on all these legal theories of recovery may be applicable.
Considering the lack of evidence in the record regarding appropriateness of class certification, we find that the trial court abused its discretion in certifying the class without a hearing or presentation of adequate supporting evidence. See Cotton, 96-1958 at p. 20; 691 So.2d at 772; see also Brumfield v. Rollins Environmental Services (LA), Inc., 589 So.2d 35, 37-38 (La.App. 1st Cir.1991) (plaintiffs failed to establish their right to use a class action where they presented merely conclusory allegations of their pleadings and declined to offer any evidence). Thus, we conclude that the trial court's order conditionally certifying this national class should be reversed, and the matter remanded to the trial court for a hearing on the issue of class certification.
Regarding defendants' contention that this court should conclude, as a matter of law, that national class certification will never be appropriate in this matter, we find that, just as it would be improper for us to conclude that class certification was appropriate herein, it would likewise be improper to conclude that class certification would never be appropriate in this matter.

CONCLUSION
For the above and foregoing reasons, the August 28, 1996 order granting class certification is reversed. The matter is remanded for a hearing on class certification to allow the introduction of evidence or development of the record on this issue. Costs of this proceeding are assessed against plaintiffs.
REVERSED AND REMANDED.
KUHN, J., concurs and assigns reasons.
KUHN, Judge, concurring.
I concur. I agree wholeheartedly with the majority in the analysis of the facts and application of the law in this case. I concur, however, to restate well-accepted conclusions by past courts who have dealt with the question of the usefulness of class action suits in the operation of the court. As a procedural device, properly used class actions are of tremendous benefit to the court system. The popularity of the class action suit has, however, brought about attacks on its procedural utility not because it is ineffectual in dealing with unwieldy number of parties who would probably be joined in litigation, but because of concerns unrelated to the litigation involved. It is the duty of the court to resolve disputes properly before the court in the most efficient means for the judicial system with due concern only for justice.
NOTES
[1] As requested by plaintiffs, specifically excluded from the class were all claims for personal injury by class members; claims of any person or entity that had already been asserted in an individual action related to the subject matter of this litigation; and all claims in excess of $50,000.00, exclusive of interest and expenses.
[2] Because the source of Louisiana's class action procedure is Fed. Rule Civ. Proc. 23, we may look to the decisions of the federal courts for guidance. Cotton, 96-1958, 96-2029, 96-2049 at p. 17; 691 So.2d at 770.